No. 22-2665
_____

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

UNITED STATES OF AMERICA,

          Plaintiff-Appellee,

  v.

RICKEY CLAYBRON,

          Defendant-Appellant.

On Appeal from the United States District Court
for the Northern District of Illinois, Rockford Division
No. 3:16-cr-50030-1 – Hon. Iain D. Johnston, Presiding

**OPENING BRIEF AND REQUIRED APPENDIX OF
DEFENDANT-APPELLANT RICKEY CLAYBRON**

**BISKUPIC & JACOBS, S.C.**
Vanessa K. Eisenmann, SBN 1084012
Michelle L. Jacobs, SBN 1021706
1045 West Glen Oaks Lane, Suite 200
Mequon, WI 53092
veisenmann@biskupicjacobs.com
mjacobs@biskupicjacobs.com
Office: 262-241-0033
Fax: 866-700-7640

**Save As**    **Clear Form**

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2665

Short Caption: USA v. Rickey Claybron

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Rickey Claybron

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
On appeal: Biskupic & Jacobs, S.C.

In the district court: John M. Nelson Law Offices; North & Sedgwick LLC;

(3) If the party, amicus or intervenor is a corporation:

   i) Identify all its parent corporations, if any; and

      n/a

   ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

      n/a

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

   n/a

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

   n/a

---

Attorney's Signature: /s Vanessa K. Eisenmann          Date: 1/24/2023

Attorney's Printed Name: Vanessa K. Eisenmann

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ☑  No ☐

Address: 1045 W. Glen Oaks Lane, Suite 106

   Mequon, WI 53092

Phone Number: 262-241-0033                    Fax Number: _____

E-Mail Address: veisenmann@biskupicjacobs.com

rev. 12/19 AK

Save As      Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2665

Short Caption: USA v. Rickey Claybron

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Rickey Claybron

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
On appeal: Biskupic & Jacobs, S.C.

In the district court: John M. Nelson Law Offices; North & Sedgwick LLC;

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        n/a

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        n/a

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

n/a

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

n/a

Attorney's Signature: /s Michelle L. Jacobs      Date: 1/24/2023

Attorney's Printed Name: Michelle L. Jacobs

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐  No ☑

Address: 1045 W. Glen Oaks Lane, Suite 106

Mequon, WI 53092

Phone Number: 262-241-0033      Fax Number:

E-Mail Address: mjacobs@biskupicjacobs.com

rev. 12/19 AK

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... v

JURISDICTIONAL STATEMENT ........................................................ 1

ISSUES PRESENTED FOR REVIEW ................................................... 2

STATEMENT OF THE CASE ................................................................ 3

I.    Background and Trial .................................................................... 3

II.   Sentencing ....................................................................................... 4

III.  Guidelines Amendment ................................................................ 5

SUMMARY OF ARGUMENT ............................................................... 7

ARGUMENT ............................................................................................ 8

I.    This Court should order a limited remand to allow the district court to reconsider the sentence on the robbery counts. ..................................... 8

    A.    Standard of Review ................................................................ 8

    B.    Considering the recent amendment to U.S.S.G. § 4A1.1, the case should be remanded for a limited purpose. ................................... 8

II.   The § 924(c) convictions should be reversed because Hobbs Act robbery does not qualify as a predicate "crime of violence." .............................. 11

    A.    Standard of Review ................................................................ 11

    B.    Hobbs Act robbery is not a "crime of violence." ........................... 12

        1.    § 1951(a) is indivisible. ...................................................... 13

        2.    § 1951(a) can be violated by threatening economic harm. 14

        3.    § 1951(a) can be violated with *de minimis* force. .............. 16

CONCLUSION ......................................................................................... 17

CERTIFICATE OF COMPLIANCE WITH CIRCUIT RULE 30(d) .............. 17

# TABLE OF AUTHORITIES

## Cases

*Bell v. McAdory*, 820 F.3d 880 (7th Cir. 2016) ................................................. 8, 11

*Burks v. United States*, 437 U.S. 1 (1978) ......................................................... 11

*Johnson v. United States,* 559 U.S. 133 (2010) ................................................. 16

*Mathis v. United States,* 579 U.S. 500 (2016) .............................................. 13, 14

*United States v. Blake*, 986 F.3d 756 (7th Cir. 2021) ......................................... 10

*United States v. Degeare,* 884 F.3d 1242 (10th Cir. 2018) ................................ 13

*United States v. Hammond*, 996 F.3d 374 (7th Cir. 2021) ................................. 11

*United States v. Jones*, 878 F.3d 10 (2d Cir. 2017) ....................................... 10, 11

*United States v. Local 560*, 780 F.2d 267 (3d Cir. 1986) .................................. 14

*United States v. Iozzi*, 420 F.2d 512 (4th Cir. 1970) ......................................... 14

*United States v. McHaney*, 1 F.4th 489 (7th Cir. 2021) ..................................... 12

*United States v. McKibbon*, 878 F.3d 967 (10th Cir. 2017) .............................. 13

*United States v. Taylor,* 142 S. Ct. 2015 (2022) ........................................... 12, 15

*United States v. Worthen*, 60 F.4th 1066 (7th Cir. 2023) .................................. 11

*United States v. Wylie*, 991 F.3d 861 (7th Cir. 2021) .................................. 11, 12

## Statutes

18 U.S.C. § 1951 ...................................................................................... 13, 14, 16

18 U.S.C. § 3582 .................................................................................................. 10

18 U.S.C. § 924(c) .................................................................................................. 7

28 U.S.C. § 2106 ................................................................................................. 7, 8

28 U.S.C. § 2255 .................................................................................................. 10

## Other Authorities

U.S.S.G. § 4A1.1 .................................................................................................... 9

U.S.S.G. § 4A1.3 .................................................................................................... 8

## Treatises

Leonard Sand et al., Modern Federal Jury Instructions Criminal (2022) ..... 15

## JURISDICTIONAL STATEMENT

This is a direct appeal of a federal criminal conviction and sentence. The district court had jurisdiction pursuant to 18 U.S.C. § 3231, and the underlying criminal statutes, 18 U.S.C. §§ 1951 and 924(c).

On October 26, 2021, Rickey Claybron was convicted in a jury trial on a nine-count indictment.  R. 284, 285.[1]  He was sentenced to 492 months' imprisonment on September 12, 2022, and final judgment was entered on September 14, 2022.  R. 308, 309; App. 1.  On September 20, 2022, Claybron timely filed a notice of appeal.  R. 311.

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2106, 18 U.S.C. § 3742, and Fed. R. App. P. 4.

---

[1]     This brief uses the following abbreviations: "R." refers to the docket number in the district court; "Tr." refers to the trial transcript, R. 316-23; "PSR" refers to the updated presentence report, R. 301; "Sent. Tr." refers to the sentencing transcript, R. 315; and "App." refers to the appellant's appendix.

## ISSUES PRESENTED FOR REVIEW

I.      Whether the case should be remanded, pursuant to 28 U.S.C. § 2106, for the limited purpose of giving the district court an opportunity to resentence Claybron on the robbery counts, in light of a recently adopted Guidelines amendment that would result in a lower criminal-history category and Guidelines range.

II.      Whether Hobbs Act robbery, 18 U.S.C. § 1951(a), qualifies as a predicate "crime of violence" for purposes of convictions under 18 U.S.C. § 924(c). This argument is currently foreclosed by circuit precedent, *see United States v. Worthen*, 60 F.4th 1066 (7th Cir. 2023), and Claybron recognizes that this Court is unlikely to reconsider that decision. However, Claybron wishes to preserve the issue for further review.

## STATEMENT OF THE CASE

### I.    Background and Trial

Between October 28 and November 13, 2015, three Rockford, Illinois businesses were robbed by masked individuals with guns:  H&S Tobacco, Advanced Auto, and Shell Express.  PSR ¶ 7.  The perpetrators also attempted to rob a fourth business, Zake Convenience.  *Id.*

Video surveillance showed that one of the robbers had a missing finger, which led investigators to Deandre Haywood, who was closely connected to Rickey Claybron.  *Id.* ¶ 34.  Claybron subsequently consented to a search of his residence and confessed to being involved in the attempted robbery of Zake Convenience.  *Id.*; R. 115 at 2.

On April 10, 2018, a superseding indictment was filed, charging Claybron, Haywood, and Darnell Leavy with conspiracy to commit Hobbs Act robbery (Count 1), three counts of Hobbs Act robbery (Counts 2, 4, and 8), and one count of attempted Hobbs Act robbery (Count 6), in violation of 18 U.S.C. § 1951(a).  R. 37.  The defendants were also charged with four counts of use of a firearm during a "crime of violence" (Counts 3, 5, 7, and 9), in violation of 18 U.S.C. § 924(c).  *Id.*  Claybron proceeded to a jury trial.

At trial, Claybron conceded guilt regarding the attempted robbery of Zake Convenience but contested the other three robberies.  Tr. 1163.  The government presented evidence consisting of videos showing one of the

robbers wearing a green sweatshirt, victim statements, expert testimony regarding DNA found on the green sweatshirt and firearm evidence, testimony from co-conspirators, recorded jail calls, and Claybron's confession. *Id.* 1122-61.  The jury convicted on all counts.  *Id.* 1232-34.

After Claybron's trial but before sentencing, the Supreme Court issued its decision in *United States v. Taylor*, 142 S. Ct. 2015 (2022), holding that attempted Hobbs Act robbery was not a predicate "crime of violence" for purposes of § 924(c).  As a result, the government dismissed Count 7.  R. 307.

## II.  Sentencing

The PSR recommended that Claybron's combined adjusted offense level for the robbery counts was 30.  PSR ¶ 77.  Claybron had 11 criminal-history points, which would have resulted in a criminal-history category (CHC) of V. *Id.* ¶ 97.  But because Claybron committed the robberies while he was serving a criminal-justice sentence (i.e. while he was on parole), two "status" points were added, for a total of 13 criminal-history points.  *Id.* ¶ 98.  This resulted in a CHC of VI, and a Guidelines range of 168-210 months.  *Id.* ¶¶ 99, 156.

At sentencing, there were no objections to the PSR.  Sent. Tr. 6.  The court adopted the PSR's Guidelines calculations for the robbery counts.  *Id.* 7; App. 10.  For the § 924(c) counts, the court found that the Guidelines ranges were the applicable mandatory-minimum sentences.  *Id.* 7-8; App. 10-11.

The government requested a sentence of 168 months on the robbery counts, followed by the mandatory-minimum sentences for the § 924(c) counts. *Id.* 17.  Defense counsel requested a sentence of time served on the robbery counts, followed by the mandatory-minimum sentences for the § 924(c) counts. *Id.* 22.  As relevant here, defense counsel argued that the mandatory-minimum sentence (27 years) was sufficient because Claybron's criminal history was relatively minor, considering his very difficult childhood. *Id.* 18-19, 31.

The district court discussed the § 3553(a) factors and imposed the government's requested sentence of 168 months on the robbery counts and the mandatory-minimum sentences on the gun counts, for a total of 492 months' (41 years') imprisonment. *Id.* 31-41; App. 12-22.  Claybron appealed.

## III.  Guidelines Amendment

On April 27, 2023, while this appeal was pending, the United States Sentencing Commission submitted to Congress amendments to the Guidelines that, absent congressional action, will go into effect on November 1, 2023.  As relevant here, the Commission revised U.S.S.G. § 4A1.1(d) to provide that only <u>one</u> criminal-history point is added if the defendant was under a criminal-justice sentence at the time of the offense

(assuming the defendant receives seven or more points for prior convictions). App. 24-26.[2]

The Commission decided to make this change based on a June 2022 report finding that "status" points add very little to the overall predictive value regarding recidivism that is associated with the criminal-history score. App. 27-30.[3]  The Commission is currently considering whether the amendment should apply retroactively.  App. 31-32.[4]

---

[2] *Available at* https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202305_Amendments.pdf (last visited May 31, 2023).

[3] *Available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2022/20220628_Status.pdf (last visited May 31, 2023).

[4] *Available at* https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20230405_prelim-IFC.pdf (last visited May 31, 2023).

## SUMMARY OF ARGUMENT

This case should be remanded for a limited resentencing.  Although Claybron concedes that his Guidelines were calculated correctly at the time, the Sentencing Commission recently has made changes to the Guidelines that would eliminate one of Claybron's "status" points, resulting in a lower criminal-history category and Guidelines range.

This change is not a mere technicality but reflects research showing that "status" points add very little to the overall predictive value regarding recidivism that is associated with the criminal-history score.  Accordingly, pursuant to this Court's authority under 28 U.S.C. § 2106, the case should be remanded for the limited purpose of allowing the district court to resentence Claybron on the robbery counts.

In addition, if subsequent developments abrogate this Court's current precedent regarding whether Hobbs Act robbery is a "crime of violence" for purposes of 18 U.S.C. § 924(c), then Claybron's § 924(c) convictions should be reversed.  Claybron acknowledges that this Court is unlikely to revisit its precedent but makes this argument for preservation purposes.

# ARGUMENT

**I.  This Court should order a limited remand to allow the district court to reconsider the sentence on the robbery counts.**

### A.    Standard of Review

Section 2106 of Title 28 reads as follows:

> The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, <u>or require such further proceedings to be had as may be just under the circumstances</u>.

28 U.S.C. § 2106 (emphasis added).  Under this section, this Court has broad authority "to order 'such further proceedings to be had as may be just under the circumstances.'"  *Bell v. McAdory*, 820 F.3d 880, 884 (7th Cir. 2016) (quoting 28 U.S.C. § 2106 and remanding for further consideration).

### B.    Considering the recent amendment to U.S.S.G. § 4A1.1, the case should be remanded for a limited purpose.

Claybron had 11 criminal-history points, which would have resulted in a criminal-history category (CHC) of V.  But because Claybron committed the robberies while on parole, two "status" points were added, for a total of 13.  This resulted in a CHC of VI, and a Guidelines range of 168-210 months.

Claybron concedes that he did not object to the Guidelines or request a downward departure of his CHC.  *See* U.S.S.G. § 4A1.3(b)(1).  Rather, in discussing the § 3553(a) factors, defense counsel requested a sentence of time served on the robbery counts, arguing that the 27-year mandatory minimum

for the gun counts was sufficient because Claybron's criminal history was relatively minor, considering his very difficult childhood.  The district court rejected this argument and imposed the government's requested sentence of 168 months on those counts.

On April 27, 2023, while this appeal was pending, the Sentencing Commission submitted to Congress amendments to the Guidelines that, absent congressional action, will go into effect on November 1, 2023.  As relevant here, the Commission revised U.S.S.G. § 4A1.1(d) to provide that only <u>one</u> criminal-history point is added for committing the offense while under a criminal-justice sentence (such as probation or parole), assuming the defendant receives seven or more points for prior convictions, which Claybron did.  App. 25.

This action was not a mere technicality.  The Commission decided to make this change because it found that "status" points: (1) affect a lot of defendants (37.5%), and (2) increase the CHC of most of those defendants (61.5%), but (3) add <u>very little</u> to the overall predictive value regarding recidivism that is associated with the criminal-history score (0.2%).  App. 29-30.  The Commission's report on status points was published in June 2022— that is, before Claybron was sentenced.  App. 27.

Under the status-points amendment, Claybron's criminal-history score would be 12 (instead of 13), and his CHC would be V (instead of VI).  With an

offense level of 30, his Guidelines range for the robbery counts would be 151-188 months (instead of 168-210 months).  But again, the Guidelines amendments are not effective until November.

The Sentencing Commission is currently considering whether the status-points amendment should apply retroactively, such that, in the future, defendants like Claybron may be able to file a motion under 18 U.S.C. § 3582(c) to reduce their terms of imprisonment.  App. 31-32.  But because this Court has held that, "[o]nce the direct appeal is over, however, the Constitution no longer requires the government to ensure that the defendant has a lawyer," Claybron will not have the benefit of appointed counsel in conjunction with a motion under § 3582 (or under 28 U.S.C. § 2255).  *See United States v. Blake*, 986 F.3d 756, 758 (7th Cir. 2021).

In a similar case, *United States v. Jones*, 878 F.3d 10, 20-24 (2d Cir. 2017) (Calabresi, J., concurring), the court found that the defendant's sentence was not substantively unreasonable, given the applicable Guidelines range at the time, but bemoaned that it could not remand the case to the district court for reconsideration, in light of the lower Guidelines range that currently applied.  After the opinion was issued, the court was made aware that "28 U.S.C. § 2106 permits affirmances and remands for further proceedings in the interest of justice, and has been applied in criminal

10

situations." *Id.* at 24 n.6 (collecting cases).  As a result, the court modified its decision and remanded to the district court to reconsider the sentence.  *Id.*

Here, as in *Jones*, although the Guidelines were correctly calculated at the time, allowing the district court to reconsider the robbery sentence in light of subsequent Guidelines developments is "just under the circumstances."  *See Bell*, 820 F.3d at 884 (remanding for further consideration); *see also Burks v. United States*, 437 U.S. 1, 17-18 (1978).  A limited remand is also appropriate because the record is clear that the rest of the sentence (i.e. the mandatory-minimum § 924(c) sentences) would not change.  *See United States v. Wylie*, 991 F.3d 861, 865 (7th Cir. 2021).

## II.   The § 924(c) convictions should be reversed because Hobbs Act robbery does not qualify as a predicate "crime of violence."

This argument is currently foreclosed by circuit precedent, *see United States v. Worthen*, 60 F.4th 1066 (7th Cir. 2023), and Claybron recognizes that this Court is unlikely to reconsider that decision.  However, Claybron makes this argument to preserve the issue for further review.

### A.   Standard of Review

Where, as here, a defendant fails to raise an argument before the district court, this Court reviews for plain error.  *United States v. Hammond*, 996 F.3d 374, 400 (7th Cir. 2021).  To show plain error, a defendant must

demonstrate (1) an error (2) that is clear or obvious and (3) affected the defendant's substantial rights. *Wylie*, 991 F.3d at 863.

**B.    Hobbs Act robbery is not a "crime of violence."**

Claybron recognizes that this Court almost certainly will continue to decline to reconsider its current precedent. *See United States v. McHaney*, 1 F.4th 489, 492 (7th Cir. 2021) (advising, pre-*Taylor*, that such arguments were frivolous). Still, Claybron briefly develops this argument in the event that current precedent is abrogated.

Claybron has three § 924(c) convictions that are predicated on Hobbs Act robbery convictions. In *United States v. Taylor,* 142 S. Ct. 2015 (2022), the Supreme Court held that <u>attempted</u> Hobbs Act robbery is <u>not</u> a "crime of violence" under the categorial approach for purposes of § 924(c). The Supreme Court specifically reserved the question of whether <u>completed</u> Hobbs Act robbery also was disqualified. *Id.* at 2020 ("Whatever one might say about *completed* Hobbs Act robbery, *attempted* Hobbs Act robbery does not satisfy the elements clause.").

There are at least three arguments supporting that completed Hobbs Act robbery is not a "crime of violence." *First*, § 1951(a) is an indivisible offense with alternative means—including both attempted Hobbs Act robbery and completed Hobbs Act robbery—so *Taylor* applies to both. *Second*, the offense can be committed by threatening injury to intangible property (i.e.

economic harm), which is not threat of "physical force" required under

§ 924(c). And *third*, the offense can be committed by threatening *de minimis*

force against the property of another, which falls outside of § 924(c).

### 1.    § 1951(a) is indivisible.

When a statute bundles alternative terms within a single sentence, this

is a good indication that the statute is indivisible. *See United States v.*

*McKibbon*, 878 F.3d 967, 975 (10th Cir. 2017). The Hobbs Act statute does

exactly that.

> Section 1951(a) reads as follows:

> Whoever in any way or degree obstructs, delays, or affects
> commerce or the movement of any article or commodity in
> commerce, by robbery or extortion or attempts or conspires so to
> do, or commits or threatens physical violence to any person or
> property in furtherance of a plan or purpose to do anything in
> violation of this section shall be fined under this title or
> imprisoned not more than twenty years, or both.

18 U.S.C. § 1951(a).

This statute is a one-sentence proscription that joins a number of acts

as a disjunctive series, providing the same penalty for all of the different

ways of violating it. This bundling and penalty combination strongly

indicates that statute is indivisible, with alternative means. *See United*

*States v. Degeare,* 884 F.3d 1242, 1253 (10th Cir. 2018) (citing *Mathis v.*

*United States,* 579 U.S. 500, 518 (2016)). If any ambiguity remains about the

divisibility of § 1951(a), then this Court must assume that it is indivisible. *See Mathis*, 579 U.S. at 519.

In sum, because *Taylor* held that at least one of the means within this indivisible statute (i.e. attempted Hobbs Act robbery) is not a "crime of violence," then all of § 1951(a) categorically fails to qualify. Claybron's § 924(c) convictions are void.

### 2.    § 1951(a) can be violated by threatening economic harm.

Even if § 1951(a) is divisible, completed Hobbs Act robbery still does not qualify as a "crime of violence" because the statute can be violated by threatening injury to intangible property (e.g., threatening to devalue a stock option or contract right), *see* 18 U.S.C. § 1951(b), whereas § 924(c) requires a threat of physical force. This categorical mismatch disqualifies Hobbs Act robbery as a "crime of violence."

Indeed, courts have understood the term "property" in the Hobbs Act to "protect intangible, as well as tangible, property." *See United States v. Local 560*, 780 F.2d 267, 281 (3d Cir. 1986); *see also United States v. Iozzi*, 420 F.2d 512, 514 (4th Cir. 1970) (sustaining Hobbs Act conviction for threat "to slow down or stop construction projects unless his demands were met"). Although these cases defined "property" in Hobbs Act extortion cases, the same

14

meaning should apply to "property" in the Hobbs Act robbery context because they are criminalized in the same statute.

A leading jury-instruction treatise also includes intangible property in its Hobbs Act robbery instructions. *See* 3.50 Leonard B. Sand et al., *Modern Federal Jury Instructions Criminal* ¶ 50.05 (2022) ("[t]he use or threat of force or violence might be aimed at a third person, or at causing economic rather than physical injury"); *id.* ¶ 50.06 (2022) ("fear exists if a victim experiences anxiety, concern, or worry over expected personal harm or business loss, or over financial or job security"). Similar instructions have been used in trials around the country. *See*, *e.g., United States v. Baker*, No. 11-CR-20020, ECF No. 53 at 20 (D. Kan. Sept. 15, 2011) (allowing conviction for causing anxiety about future harm to intangible property).

In *Taylor*, 142 S. Ct. at 2024, one of the government's central arguments was that there was no "realistic probability" of prosecution for attempted Hobbs Act robbery based on an attempted threat of force. The Supreme Court, however, firmly rejected the government's argument and, in so doing, threw out the "realistic probability" test, at least in the context of § 924(c).

In sum, because the possibility exists that a Hobbs Act robbery offense can be committed with threats of economic harm, the inquiry ends. The statute categorically fails to qualify as a § 924(c) "crime of violence."

15

### 3.     § 1951(a) can be violated with *de minimis* force.

Even if Hobbs Act robbery does not criminalize threats against intangible property, it still fails to qualify as a "crime of violence" because it does not require a threat of "violent" physical force necessary to qualify under § 924(c).  Under the force clause, "physical force" against the "property of another" requires violent physical force.  *See Johnson v. United States,* 559 U.S. 133, 140 (2010).  *De minimis* force does not suffice.

Hobbs Act robbery can be committed in the same way.  Hobbs Act robbery, in relevant part, merely requires a threat of "injury" to the property of another—not violent physical force against the person of another.  *See* 18 U.S.C. § 1951(b)(1).  Therefore, it can be violated by threatening *de minimis force* against one's property, for example, by robbing someone under the threat of spray-painting a witness's car.

For all of these reasons, Hobbs Act robbery does not qualify as a "crime of violence" for purposes of § 924(c).  Claybron's convictions should be reversed.

**CONCLUSION**

For all of the foregoing reasons, Claybron's § 924(c) convictions should be reversed.  In the alternative, Claybron's case should be remanded for the limited purpose of allowing the district court to reconsider the length of the robbery sentence, in light of the recent Guidelines amendment.

                              **BISKUPIC & JACOBS, S.C.**

                              /s/ Vanessa K. Eisenmann
                              Vanessa K. Eisenmann
                              Michelle L. Jacobs


**CERTIFICATE OF COMPLIANCE WITH CIRCUIT RULE 30(d)**

Undersigned counsel hereby states and certifies that all of the materials required by Circuit Rule 30(a) and 30(b) are included in the Appendix to this brief.

                              **BISKUPIC & JACOBS, S.C.**

                              /s/ Vanessa K. Eisenmann
                              Vanessa K. Eisenmann

## REQUIRED APPENDIX TABLE OF CONTENTS

Judgment (R. 309).........................................................................App. 1

Ruling on Guidelines and Sentence Rationale (R. 315 at 7-8, 31-41).......App. 9

U.S.S.C. Adopted Amendment to § 4A1.1 ..............................................App. 24

U.S.S.C. Research Report re § 4A1.1 .....................................................App. 27

U.S.S.C. Issue for Comment re Retroactively of § 4A1.1.......................App. 31

# UNITED STATES DISTRICT COURT
### Northern District of Illinois

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| **v.** | |
| RICKEY CLAYBRON | Case Number:     3:16-CR-50030(1) |
| | USM Number:    51258-424 |
| | |
| | Paul Camarena |
| | Defendant's Attorney |

## THE DEFENDANT:

☐ pleaded guilty to count(s)

☐ pleaded nolo contendere to count(s) _____ which was accepted by the court.

☒ was found guilty on count(s) 1-9 of the superseding indictment after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section / Nature of Offense | Offense Ended | Count |
|---|---|---|
| 18 U.S.C. § 1951 (a) Conspiracy to Interfere with Commerce by Robbery | 11/13/2015 | 1 |
| 18 U.S.C. § 1951 (a) Interference with Commerce by Robbery | 10/28/2015 | 2 |
| 18 U.S.C. § 924 (c)(1)(A)(ii) Using, Carrying, and Brandishing a Firearm During and in Relation to a Crime of Violence | 10/28/2015 | 3 |
| 18 U.S.C. § 1951 (a) Interference with Commerce by Robbery | 11/2/2015 | 4 |
| 18 U.S.C. § 924 (c)(1)(A)(iii) Using, Carrying and Brandishing and Discharging a Firearm During and in Relation to a Crime of Violence | 11/2/2015 | 5 |
| 18 U.S.C. § 1951 (a) Attempt Interference with Commerce by Robbery | 11/5/2015 | 6 |
| 18 U.S.C. § 1951(a) Interference with Commerce by Robbery | 11/13/2015 | 8 |
| 18 U.S.C. § 924 (c)(1)(A)(iii) Using, Carrying, and Brandishing and Discharging a Firearm During a Crime of Violence | 11/13/2015 | 9 |

The defendant is sentenced as provided in pages 2 through 8 of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☒ Count 7 of the superseding indictment is dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States Attorney for this District within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States Attorney of material changes in economic circumstances.

September 12, 2022
Date of Imposition of Judgment

Signature of Judge
Iain D. Johnston, United States District Judge

September 14, 2022
Date

App. 001

ILND 245B (Rev. 03/12/2020) Judgment in a Criminal Case
Sheet 2 – Imprisonment

DEFENDANT:  RICKEY CLAYBRON
CASE NUMBER:  3:16-CR-50030(1)

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of 492 months which is broken down as follows: 168 month as to count 1, 2, 4, 6, and 8 to run concurrently with each other.  84 months as to count 3 to run consecutive to counts 1, 2, 4, 5, 6, 8 and 9.  120 months as to count 5 to run consecutive with counts 1-4, 6, 8 and 9.  120 months as to count 9 to run consecutive to counts 1-6 and 8.

☒　　　　The court makes the following recommendations to the Bureau of Prisons: the closest facility geographically to Chicago, Illinois with the exception of USP Thomson and for the defendant to be in the RDAP program. The Court also recommends the defendant take the following courses: apprenticeship training, Criminal Thinking (Right Decision, Wrong Decision), Federal Prison Industries, Money Smart for Adults and vocational training.

☒　　　　The defendant is remanded to the custody of the United States Marshal.

☐　　　　The defendant shall surrender to the United States Marshal for this district:

　　　　☐　　　at　　　　on

　　　　☐　　　as notified by the United States Marshal.

　　　　☐　　　The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

　　　　☐　　　before 2:00 pm on

　　　　☐　　　as notified by the United States Marshal.

　　　　☐　　　as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows: _____

_____

_____

Defendant delivered on _____ to _____ at _____, with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

App. 002

Case: 3:16-cr-50030 Document #: 309 Filed: 09/14/22 Page 3 of 8 PageID #:1490
ILND 245B (Rev. 03/12/2020) Judgment in a Criminal Case
Sheet 6 – Schedule of Payments    Case: 22-2665    Document: 17    Filed: 05/31/2023    Pages: 55    Judgment – Page 3 of 8

DEFENDANT:  RICKEY CLAYBRON
CASE NUMBER:  3:16-CR-50030(1)

## MANDATORY CONDITIONS OF SUPERVISED RELEASE PURSUANT TO 18 U.S.C § 3583(d)

Upon release from imprisonment, you shall be on supervised release for a term of: 3 years as to counts 1-6 and 8-9 to run concurrent.
.

The court imposes those conditions identified by checkmarks below:

**During the period of supervised release:**

☒  (1)  you shall not commit another Federal, State, or local crime.

☒  (2)  you shall make restitution in accordance with 18 U.S.C.  §  § 3663 and 3663A or any other statute authorizing a sentence of restitution.

☒  (3)  you shall not unlawfully possess a controlled substance.

☐  (4)  you shall attend a public, private, or private nonprofit offender rehabilitation program that has been approved by the court, if an approved program is readily available within a 50-mile radius of your legal residence.  [Use for a first conviction of a domestic violence crime, as defined in **§ 3561(b)**.]

☐  (5)  you shall register and comply with all requirements of the Sex Offender Registration and Notification Act **(42 U.S.C. § 16913)**.

☒  (6)  you shall cooperate in the collection of a DNA sample if the collection of such a sample is required by law.

☒  (7)  you shall refrain from any unlawful use of a controlled substance AND submit to one drug test within 15 days of release on supervised release and at least two periodic tests thereafter, up to 104 periodic tests for use of a controlled substance during each year of supervised release.  [This mandatory condition may be ameliorated or suspended by the court for any defendant if reliable sentencing information indicates a low risk of future substance abuse by the defendant.]

## DISCRETIONARY CONDITIONS OF SUPERVISED RELEASE PURSUANT TO 18 U.S.C § 3563(b) AND 18 U.S.C § 3583(d)

**Discretionary Conditions** — The court orders that you abide by the following conditions during the term of supervised release because such conditions are reasonably related to the factors set forth in **§ 3553(a)(1)** and **(a)(2)(B), (C), and (D);** such conditions involve only such deprivations of liberty or property as are reasonably necessary for the purposes indicated in **§ 3553 (a)(2) (B), (C), and (D);** and such conditions are consistent with any pertinent policy statement issued by the Sentencing Commission pursuant to **28 U.S.C. 994a**.
The court imposes those conditions identified by checkmarks below:

**During the period of supervised release:**

☐  (1)  you shall provide financial support to any dependents if you are financially able to do so.

☐  (2)  you shall make restitution to a victim of the offense under **§ 3556** (but not subject to the limitation of **§ 3663(a)** or **§ 3663A(c)(1)(A))**.

☐  (3)  you shall give to the victims of the offense notice pursuant to the provisions of **§ 3555**, as follows:

☒  (4)  you shall seek lawful employment or pursue conscientiously a course of study or vocational training that will equip you for employment.  If lawfully employed, you must work conscientiously.

☐  (5)  you shall refrain from engaging in the following occupation, business, or profession bearing a reasonably direct relationship to the conduct constituting the offense, or engage in the following specified occupation, business, or profession only to a stated degree or under stated circumstances; (if checked yes, please indicate restriction(s))

☒  (6)  ☒  (a) you shall refrain from knowingly meeting, communicating, or otherwise interacting with any person whom you know to be engaged, or planning to be engaged, in criminal activity;
☒  (b) you shall refrain from knowingly meeting, communicating, or otherwise interacting with any person whom you know is a convicted felon, unless granted permission by the court.  ☒  This condition does not apply to the following persons: family members or co-workers.
☒  (c) you shall refrain from visiting the following types of places: H&A Tobacco, Shell Express, Advance Auto Parts, and Zake Convenience Store.
☒  (d) you shall refrain from knowingly meeting, communicating, or otherwise interacting with the following persons: Deandre Haywood, Darnell Levy, Kassi Holbrook, and Samantha Roach.

☒  (7)  you shall refrain from ☒ any or ☐ excessive use of alcohol (defined as ☐ having a blood alcohol concentration

App. 003

Case: 3:16-cr-50030 Document #: 309 Filed: 09/14/22 Page 4 of 8 PageID #:1491
ILND 245B (Rev. 03/12/2020) Judgment in a Criminal Case
Case: 22-2665      Document: 17      Filed: 05/31/2023      Pages: 55   Judgment – Page 4 of 8
Sheet 6 – Schedule of Payments

DEFENDANT:  RICKEY CLAYBRON
CASE NUMBER:  3:16-CR-50030(1)

greater than 0.08; or ☐        ), and any use of a narcotic drug or other controlled substance, as defined in **§ 102**
of the Controlled Substances Act (**21 U.S.C. § 802**), without a prescription by a licensed medical practitioner.

☒  (8)  you shall refrain from possessing a firearm, BB gun, pellet gun, or destructive device, and you shall refrain from using any other object as a dangerous weapon. The term "dangerous weapon" includes objects used, though not designed to be used, as weapons.

☒  (9) ☒  (a)  you shall participate in a substance abuse or alcohol treatment program approved by the probation officer and abide by the rules and regulations of that program. The program may include testing, up to a maximum of 104 tests per year to determine your compliance with the requirements of the program.  The probation officer shall supervise your participation in the program.

☐  (b)  you shall participate in a mental health treatment program.  The program shall be approved by the probation officer.  You shall abide by the rules and regulations of the program.  The probation officer, in consultation with the treatment provider, shall supervise your participation in the program (provider, location, modality, duration, intensity, etc.)

☐  (c)  you shall take all mental health medications prescribed to you by your mental health treatment provider.

☐  (d)  you shall participate, at the direction of a probation officer, in medical care; (if checked yes, please specify:            .)

☐  (10)  (intermittent confinement): you shall remain in the custody of the Bureau of Prisons during nights, weekends, or other intervals of time, totaling        [no more than the lesser of one year or the term of imprisonment authorized for the offense], during the first year of the term of supervised release (provided, however, that a condition set forth in **§3563(b)(10)** shall be imposed only for a violation of a condition of supervised release in accordance with **§ 3583(e)(2)** and only when facilities are available) for the following period        .

☐  (11)  (community confinement): you shall reside at, or participate in the program of a community corrections facility (including a facility maintained or under contract to the Bureau of Prisons) for all or part of the term of supervised release, for a period of        months.

☐  (12)  you shall work in community service for        hours as directed by a probation officer.

☐  (13)  you shall reside in the following place or area:        , or refrain from residing in a specified place or area:        .

☒  (14)  you shall refrain from knowingly leaving the federal judicial district where you are being supervised, unless granted permission to leave by the court or a probation officer. The geographic area of the Northern District of Illinois currently consists of the Illinois counties of Cook, DuPage, Grundy, Kane, Kendall, Lake, LaSalle, Will, Boone, Carroll, DeKalb, Jo Daviess, Lee, McHenry, Ogle, Stephenson, Whiteside, and Winnebago.

☒  (15)  you shall report to the probation office in the federal judicial district to which you are released within 72 hours of your release from imprisonment.  You shall thereafter report to a probation officer at reasonable times as directed by the court or a probation officer.

☒  (16)  ☒  you shall permit a probation officer to visit you:
☒  (a) at home ☒ (i) between the hours of 6:00 a.m. and 10:00 p.m. or ☐ (ii) at any reasonable time.
☒  (b) at work to verify your employment
☒  (c) at work, a community service location, or any other reasonable location to verify your compliance with your supervised release conditions.
☐  (d) (other)            .
☒  you shall permit confiscation of any contraband observed in plain view of the probation officer.

☒  (17)  you shall notify the probation officer within 72 hours of becoming aware of any change in your employer or residence.

☒  (18)  you shall notify a probation officer within 72 hours if after being arrested, charged, or questioned by a person you know to be a law enforcement officer.

☐  (19) (home confinement)

☐  (a)(i) (home incarceration) for a period of __ months, you are restricted to your residence at all times except for medical necessities and court appearances or other activities specifically approved by the court.

☐  (a)(ii) (home detention) for a period of __ months, you are restricted to your residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities pre-approved by the probation officer.

☐  (a)(iii) (curfew) for a period of __ months, you are restricted to your residence every day.

☐  from the times directed by the probation officer; or ☐ from __ to __.

☐  (b) your compliance with this condition, as well as other court-imposed conditions of supervision, shall be monitored by a form of location monitoring technology selected at the discretion of the probation officer, and you shall abide by all technology requirements.

App. 004

Case: 3:16-cr-50030 Document #: 309 Filed: 09/14/22 Page 5 of 8 PageID #:1492
ILND 245B (Rev. 03/12/2020) Judgment in a Criminal Case
Sheet 6 – Schedule of Payments
Case: 22-2665    Document: 17    Filed: 05/31/2023    Pages: 55    Judgment – Page 5 of 8

DEFENDANT:  RICKEY CLAYBRON
CASE NUMBER:  3:16-CR-50030(1)

☐      (c) you shall pay all or part of the cost of the location monitoring, at the daily contractual rate, if you are financially able to do so.

☐   (20)   you shall comply with the terms of any court order or order of an administrative process pursuant to the law of a State, the District of Columbia, or any other possession or territory of the United States, requiring payments by you for the support and maintenance of a child or of a child and the parent with whom the child is living.

☐   (21)   (deportation): you shall be surrendered to a duly authorized official of the Homeland Security Department for a determination on the issue of deportability by the appropriate authority in accordance with the laws under the Immigration and Nationality Act and the established implementing regulations.  If ordered deported, you shall not remain in or enter the United States without obtaining, in advance, the express written consent of the United States Attorney General or the United States Secretary of the Department of Homeland Security.

☐   (22)   Other:

☐   (23)   You shall submit your person, property, house, residence, vehicle, papers [computers (as defined in 18 U.S.C. 1030(e)(1)), other electronic communications or data storage devices or media,] or office, to a search conducted by a United States Probation Officer(s). Failure to submit to a search may be grounds for revocation of release.  You shall warn any other occupants that the premises may be subject to searches pursuant to this condition. An officer(s) may conduct a search pursuant to this condition only when reasonable suspicion exists that you have violated a condition of your supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner.

☒   (24)   you shall submit your person, property, house, residence, office, vehicle, and papers conducted by a United States Probation Officer(s).  Failure to submit to a search may be grounds for revocation of release.  You shall warn any other occupants that the premises may be subject to searches pursuant to this condition.  An officer(s) may conduct a search pursuant to this condition only when reasonable suspicion exists that you have violated a condition of your supervision and that the area(s) to be searched contains evidence of this violation.  Any search must be conducted at a reasonable time and in a reasonable manner.


## SPECIAL CONDITIONS OF SUPERVISED RELEASE PURSUANT TO 18 U.S.C. 3563(b)(22) and 3583(d)

The court imposes those conditions identified by checkmarks below:

**During the term of supervised release:**

☐   (1)   if you have not obtained a high school diploma or equivalent, you shall participate in a General Educational Development (GED) preparation course and seek to obtain a GED within the first year of supervision.

☐   (2)   you shall participate in an approved job skill-training program at the direction of a probation officer within the first 60 days of placement on supervision.

☐   (3)   you shall, if unemployed after the first 60 days of supervision, or if unemployed for 60 days after termination or lay-off from employment, perform at least _____ hours of community service per week at the direction of the probation office until gainfully employed. The total amount of community service required over your term of service shall not exceed _____ hours.

☐   (4)   you shall not maintain employment where you have access to other individual's personal information, including, but not limited to, Social Security numbers and credit card numbers (or money) unless approved by a probation officer.

☒   (5)   you shall not incur new credit charges of $250 or more or open additional lines of credit without the approval of a probation officer unless you are in compliance with the financial obligations imposed by this judgment.

☒   (6)   you shall provide a probation officer with access to any requested financial information for use in connection with Collection of outstanding fines and/or restitution obligations.

☒   (7)   you shall notify the court within 72 hours of any material change in your economic circumstances that might affect your ability to pay restitution, fines, or special assessments.

☒   (8)   you shall file accurate income tax returns and pay all taxes, interest, and penalties due and owing by you to the Internal Revenue Service.

☐   (9)   you shall participate in a sex offender treatment program.  The specific program and provider will be determined by a probation officer. You shall comply with all recommended treatment which may include psychological and physiological testing. You shall maintain use of all prescribed medications.

☐      You shall comply with the requirements of the Computer and Internet Monitoring Program as administered by the United States Probation Office. You shall consent to the installation of computer monitoring software on all identified computers to which you have access and to which the probation officer has legitimate access by right or consent.  The software may restrict and/or record any and all activity on the computer, including the capture of keystrokes, application information, Internet use history, email correspondence, and chat conversations.  A notice will be placed on the computer at the time of installation to warn others of the existence of the monitoring software. You shall not remove, tamper with, reverse engineer, or in any way circumvent the software.

App. 005

Case: 3:16-cr-50030 Document #: 309 Filed: 09/14/22 Page 6 of 8 PageID #:1493
ILND 245B (Rev. 03/12/2020) Judgment in a Criminal Case
Sheet 6 – Schedule of Payments

Case: 22-2665          Document: 17          Filed: 05/31/2023          Pages: 55     Judgment – Page 6 of 8

DEFENDANT: RICKEY CLAYBRON
CASE NUMBER: 3:16-CR-50030(1)

☐     The cost of the monitoring shall be paid by you at the monthly contractual rate, if you are financially able, subject to satisfaction of other financial obligations imposed by this judgment.

☐     You shall not possess or use at any location (including your place of employment), any computer, external storage device, or any device with access to the Internet or any online computer service without the prior approval of a probation officer. This includes any Internet service provider, bulletin board system, or any other public or private network or email system

☐     You shall not possess any device that could be used for covert photography without the prior approval of a probation officer.

☐     You shall not view or possess child pornography. If the treatment provider determines that exposure to other sexually stimulating material may be detrimental to the treatment process, or that additional conditions are likely to assist the treatment process, such proposed conditions shall be promptly presented to the court, for a determination, pursuant to **18 U.S.C. § 3583(e)(2),** regarding whether to enlarge or otherwise modify the conditions of supervision to include conditions consistent with the recommendations of the treatment provider.

☐     You shall not, without the approval of a probation officer and treatment provider, engage in activities that will put you in unsupervised private contact with any person under the age of 18, and you shall not knowingly visit locations where persons under the age of 18 regularly congregate, including parks, schools, school bus stops, playgrounds, and childcare facilities. This condition does not apply to contact in the course of normal commercial business or unintentional incidental contact

☐     This condition does not apply to your family members:     [Names]

☐     Your employment shall be restricted to the judicial district and division where you reside or are supervised, unless approval is granted by a probation officer. Prior to accepting any form of employment, you shall seek the approval of a probation officer, in order to allow the probation officer the opportunity to assess the level of risk to the community you will pose if employed in a particular capacity. You shall not participate in any volunteer activity that may cause you to come into direct contact with children except under circumstances approved in advance by a probation officer and treatment provider.

☐     You shall provide the probation officer with copies of your telephone bills, all credit card statements/receipts, and any other financial information requested.

☐     You shall comply with all state and local laws pertaining to convicted sex offenders, including such laws that impose restrictions beyond those set forth in this order.

☒   (10)     you shall pay to the Clerk of the Court any financial obligation ordered herein that remains unpaid at the commencement of the term of supervised release, at a rate of not less than 10% of the total of your gross earnings minus federal and state income tax withholdings.

☒   (11)     you shall not enter into any agreement to act as an informer or special agent of a law enforcement agency without the prior permission of the court.

☐   (12)     you shall pay to the Clerk of the Court $_____ as repayment to the United States of government funds you received during the investigation of this offense. (The Clerk of the Court shall remit the funds to _____ (list both Agency and Address.)

☒   (13)     Other: You shall pay restitution in the amount of $10,280.57, to be ordered joint & several. Specifically, restitution shall be paid as follows: $7,317.61 to H&A Tobacco (to be paid to State Farm Insurance); $949.96 to Advance Auto Parts; $3.00 to Jeffrey Schneider; $2,000 to Shell Express; and $10.00 to Michelle Schmidt.

App. 006

Case: 3:16-cr-50030 Document #: 309 Filed: 09/14/22 Page 7 of 8 PageID #:1494
ILND 245B (Rev. 03/12/2020) Judgment in a Criminal Case
Sheet 6 – Schedule of Payments
Case: 22-2665    Document: 17    Filed: 05/31/2023    Pages: 55    Judgment – Page 7 of 8

DEFENDANT:  RICKEY CLAYBRON
CASE NUMBER:  3:16-CR-50030(1)

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| **TOTALS** | $800.00 | $10,280.57 | $.00 | $.00 | $.00 |

☐ The determination of restitution is deferred until ____. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☒ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below.  However, pursuant to **18 U.S.C. § 3664(i)**, all nonfederal victims must be paid before the United States is paid.

Restitution of $10,280.57, jointly and severally with co-defendant Deandre R. Haywood (3:16-cr-50030-2), to:

ADVANCED AUTO PARTS
3019 Auburn Street
Rockford, IL 61101
$949.96

JEFFREY SNYDER
$3.00

MICHELLE SCHMIDT
$10.00

SHELL EXPRESS
3003 11th Street
Rockford, IL 61109-1209
$2,000.00

STATE FARM INSURANCE
Attn: Resitution Claim#13-762V-210
1400 Opus Drive, Suite 200
Downer's Grove, IL 60515
$7,317.61

☒ Restitution amount ordered pursuant to plea agreement $ 10,280.57

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant **to 18 U.S.C. § 3612(f)**.  All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to **18 U.S.C. § 3612(g)**.

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☐ the interest requirement is waived for the ____ .

    ☐ the interest requirement for the ____ is modified as follows:

☐ The defendant's non-exempt assets, if any, are subject to immediate execution to satisfy any outstanding restitution or fine obligations.

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

App. 007

Case: 3:16-cr-50030 Document #: 309 Filed: 09/14/22 Page 8 of 8 PageID #:1495
ILND 245B (Rev. 03/12/2020) Judgment in a Criminal Case
Sheet 6 – Schedule of Payments    Case: 22-2665    Document: 17    Filed: 05/31/2023    Pages: 55    Judgment – Page 8 of 8

DEFENDANT:  RICKEY CLAYBRON
CASE NUMBER:  3:16-CR-50030(1)

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A**  ☒  Lump sum payment of $11,080.57 due immediately.

☐  balance due not later than          , or

☐  balance due in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

**B**  ☐  Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

**C**  ☐  Payment in equal          *(e.g. weekly, monthly, quarterly)* installments of $          over a period of          *(e.g., months or years)*, to commence          *(e.g. 30 or 60 days)* after the date of this judgment; or

**D**  ☐  Payment in equal          *(e.g. weekly, monthly, quarterly)* installments of $          over a period of          *(e.g., months or years)*, to commence          *(e.g. 30 or 60 days)* after release from imprisonment to a term of supervision; or

**E**  ☐  Payment during the term of supervised release will commence within          *(e.g., 30 or 60 days)* after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**  ☐  Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☒  Joint and Several

| Case Number Defendant and Co-Defendant Names (including defendant number) | Total Amount | Joint and Several Amount | Corresponding Payee, if Appropriate |
|---|---|---|---|
| **16 CR 50030-2 Deandre Haywood** | **$10,280.57** | **10,280.57** | |

**See above for Defendant and Co-Defendant Names and Case Numbers (*including defendant number*), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.**

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

App. 008

```
 1                   IN THE UNITED STATES DISTRICT COURT
                  FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                            WESTERN DIVISION

 3   UNITED STATES OF AMERICA,        )  Docket No. 16 CR 50030-1
                                      )
 4              Plaintiff,            )  Rockford, Illinois
                                      )  Monday, September 12, 2022
 5      v.                            )  1:30 o'clock p.m.
                                      )
 6   RICKEY CLAYBRON,                 )
                                      )
 7              Defendant.            )

 8                     TRANSCRIPT OF PROCEEDINGS
                  BEFORE THE HONORABLE IAIN D. JOHNSTON
 9
     APPEARANCES:
10
     For the Government:        HON. JOHN R. LAUSCH, JR.
11                              (327 South Church Street,
                                 Rockford, IL  61101) by
12                              MS. JESSICA S. MAVEUS
                                Assistant U.S. Attorney
13
     For the Defendant:         NORTH & SEDGWICK LLC
14                              (500 South Clinton,
                                 Suite 132,
15                               Chicago, IL  60607) by
                                MR. PAUL CAMARENA
16
     Also Present:              MS. JENNIFER TABORSKI
17                              Probation Office

18   Court Reporter:            Heather M. Perkins-Reiva
                                327 South Church Street
19                              Rockford, Illinois  61101
                                (779)772-8309
20

21

22

23

24

25
```

1          Is that your understanding, Ms. Maveus?

2          MS. MAVEUS:  Yes, Your Honor.

3          THE COURT:  And that's my calculation, and I reviewed

4    the PSR in detail.

5          Is that your calculation as well, Mr. Camarena?

6          MR. CAMARENA:  Yes, Your Honor.

7          THE COURT:  All right.  I don't think there is a

8    need, but you tell me, Mr. Camarena, do I need to go through

9    each count to tell you how I got to 30 and VI, or they are all

10   identified here in the PSR, that I have calculated --

11         MR. CAMARENA:  That is sufficient for today.

12         THE COURT:  Okay.  All right.  So we can all agree

13   that for Counts 1, 2, 4, 6, and 8, the offense level is 30 and

14   the criminal history is VI, correct?

15         We have got that right?  We all agree on that?

16         MS. MAVEUS:  Right.

17         MR. CAMARENA:  Yes.

18         THE COURT:  Okay.  Which then gives us a calculation

19   for those specific counts of 168 months to 210 months.

20         Is that your understanding, Ms. Maveus?

21         MS. MAVEUS:  Yes.

22         THE COURT:  Is that your understanding, Mr. Camarena?

23         MR. CAMARENA:  Yes, Your Honor.

24         THE COURT:  Okay.  And then for Count 3, 84 months,

25   7 years, consecutive per statute; Count 5, 120 months,

1   10 years, consecutive per statute; and then Count 9, 120

2   months, 10 years, consecutive pursuant to statute.

3           Is that what you have, Ms. Maveus?

4           MS. MAVEUS:  Yes.

5           THE COURT:  Mr. Camarena, is that what you have?

6           MR. CAMARENA:  Yes.

7           THE COURT:  Okay.  All right.  Ms. Maveus, do we have

8   any verbal victim statements?

9           MS. MAVEUS:  No, Your Honor.

10          THE COURT:  Okay.  All right.  Mr. Claybron, we are

11  going to hear from the government, and then we are going to

12  hear from Mr. Camarena, and then if anything from the

13  government, and then you will have an opportunity to make a

14  statement if you would like to make a statement.

15          So go ahead, Ms. Maveus.

16          MS. MAVEUS:  Thank you, Your Honor.

17          I do have the video to play, and just because of the

18  technology in the courtroom, I do need to use the defendant's

19  podium.

20          THE COURT:  You need to switch.

21          Okay.  Why don't you two gentlemen sit at the counsel

22  table, and we will --

23          MS. MAVEUS:  Thank you.

24          THE COURT:  That's not a problem.  A lot of things

25  were considered when courtrooms were made but not that.

1   understand -- well, I know what your main arguments are, your

2   primary arguments:  One is the upbringing; two, what I think

3   you have described as a "relatively minor history"; third is

4   the culpability relative to the co-defendants and the

5   co-defendants' sentence; and in your brief, you mentioned

6   credit.  Credit, of course, Mr. Claybron gets credit for time

7   in pretrial and the state charges and BOP incorporates that

8   into his out date.  So BOP will consider those things.

9        So are those your main arguments, your primary?

10       MR. CAMARENA:  Yes, Your Honor.

11       THE COURT:  Okay.  I just want to make sure.

12       Although I have broad discretion in sentencing

13   defendants, Congress requires that I impose a sentence

14   sufficient but not greater than necessary to serve the

15   purposes stated in 18 USC Section 3553(a), and I must consider

16   the following general sentencing factors:  The nature and

17   circumstances of the offense; next, the history and

18   characteristics of the defendant; third, the kind of sentences

19   that are available; fourth, the sentencing commission policy

20   statements; and then, finally, an important factor in this

21   case, the need to avoid unwarranted sentencing disparities.

22       I must also consider the need for the sentence that's

23   imposed to reflect the seriousness of the offense, to promote

24   respect for the law, and to provide just punishment for the

25   offense, also to afford adequate deterrence both general and

1    specific, to protect the public from further crimes from the

2    defendant, and then finally to provide the defendant with any

3    needed educational or vocational training, medical care, or

4    other correctional treatment in the most effective manner.

5        So, again, the credit will be addressed by the Bureau

6    of Prisons.

7        And I believe that is a direct quote, "the relatively

8    minor criminal history of defendant."  I don't want to say I'm

9    jaded, but Mr. Claybron's criminal history is VI.  That's the

10   highest category you can get.  So it is difficult for me to

11   find that his criminal history is minor when it's the highest

12   category that the sentencing commission establishes.  You have

13   got a couple domestic violence convictions in there, you have

14   the cocaine, and then you have a battery.  There is uncharged

15   criminal offenses.

16       One thing that sticks out to me and it is described

17   in -- that he got no points for as far as I know, and I will

18   check, and I don't think he got any points because there was

19   not a conviction on it, is when he and Mr. Haywood were

20   tearing around the city, and when the police attempted to stop

21   him, they fled, reaching speeds of close to 90 miles an hour.

22   And then when they were finally stopped -- and I think that

23   was captured in the video.

24       Ms. Maveus, that incident, was that captured in the

25   video that was played?

1    MS. MAVEUS:  No, Your Honor.

2    THE COURT:  That was a different time with

3 Mr. Haywood.

4    MS. MAVEUS:  Right.

5    THE COURT:  Okay.  So that doesn't help that it is a

6 different time with Mr. Haywood where they are driving around.

7    So we are at the highest level of criminal history

8 based upon points, that policymakers have decided get points.

9 There is uncharged criminal history.  So I don't view

10 Mr. Claybron as having a relatively minor criminal history.

11 He doesn't have six felony convictions like some people I see,

12 but it's not relatively minor.

13    The phrase "tragic upbringing," you know, there but

14 for the grace of God go I.  It is tough for me to sit around

15 and judge people on their upbringing.  I cannot imagine the

16 pain, heartache, and long-term consequences that stem from a

17 mother essentially abandoning her child.  I can guess, but it

18 would be very difficult.  That's something that Mr. Claybron

19 lived through and I assume affected him.  In fact, he said

20 that today, and I believe that.

21    But, again, not to be jaded -- and, Mr. Camarena, you

22 see this all the time -- what I see, the upbringing of folks

23 before me who have been physically brutalized, sexually

24 assaulted, the horrific conditions that they go through as

25 children who have no ability to defend themselves, I'm not

1    seeing that here.  I'm not minimizing what Mr. Claybron has

2    been through.  I'm not for one second doing that.  But his

3    father has a job, had a job.  He's principal at a school.  His

4    siblings:  His stepsister, likewise, who has a good

5    relationship, job, kids, employed, that would be Shannon.

6    Bianca, same situation.  Paris, the brother, again, employed.

7    His stepmother, Pamela, based upon what's in the PSR, along

8    with Mr. Claybron's father made attempts as best they could.

9          I don't know what goes through a four year old's

10   head, but what I have before me in the presentence report is

11   that Mr. Claybron noted that while his parents were always

12   supportive throughout his childhood, he was "a pain as a

13   juvenile," running away on numerous occasions and having

14   school issues, which resulted in his parents and the

15   Department of Children and Family Services placing him in

16   group homes throughout his childhood.  Being in a group home

17   can be terrible, but that's not the kind of tragic upbringing

18   that I traditionally see.  I'm not saying it is good, and,

19   again, I'm not minimizing what Mr. Claybron endured as a child

20   and, again, the effects of his mother essentially abandoning

21   him.

22          As to the co-defendants -- and, again, I'm trying to

23   be very careful with my verbiage here because the Seventh

24   Circuit case law, depending on which case you read at which

25   time, a district court judge may have a misunderstanding as to

1  how co-defendants' sentences are considered -- a recent case

2  of Clay and Knox, *USA v. Clay and Knox*, essentially says we

3  look nationally, and there is lots of cases that say that.

4  There is a case called *Prado*, 743 F.3d 248 (7th Cir. 2014),

5  that specifically says I have the discretion to consider

6  co-defendants' sentences.  And you can't harmonize those two

7  lines of cases.  So in my discretion, I agree with you, I

8  should consider the co-defendants' sentences in this case,

9  and, again, that is *Prado*, P-r-a-d-o.  Sorry if I didn't spell

10  it for you.

11          Mr. Camarena makes an important and good point that

12  Mr. Haywood -- and there was plenty of violence to go

13  around -- Mr. Haywood committed the most violent act when he

14  shot a fellow human being in the back, and God only knows how

15  lucky that guy is that he is not dead or paralyzed.  It was a

16  through-and-through.  I mean, it went through like one

17  shoulder blade and out the other and somehow missed his spinal

18  column.  The angels must have been looking out for that guy.

19  I mean, that is just "astronomically" -- I'm using air quotes

20  here -- lucky that it wasn't worse for him.  That is horrific

21  stuff.  That is just terrible by Mr. Haywood.  Mr. Haywood was

22  sentenced to 26 and a half years in the Bureau of Prisons.

23          But Mr. Haywood is different.  One, there were

24  charges.  There were crimes he was not charged with.  He did

25  not physically participate in the Zake robbery.  And I think

1   it is important to remember that Mr. Haywood's sentence was

2   also a within guidelines sentence, and the Seventh Circuit has

3   repeatedly stated one of the best ways to avoid -- again, this

4   is only one factor I need to consider -- one of the best ways

5   to avoid unwarranted sentencing disparities is to sentence a

6   defendant within the guideline range.

7        Again, the guidelines are advisory; my hands are not

8   tied with them, but that action by a district court in

9   sentencing a defendant to within guideline range sentences

10  ameliorates a lot of the concerns as to unwarranted sentencing

11  disparities, particularly on a national level.  But I do

12  recognize my discretion to consider the co-defendants, and I

13  do look at Mr. Haywood, and he does get 26 and a half years,

14  but he is different.

15       And even though I may have the discretion to drop

16  below the sentencing guidelines, dropping any punishment for

17  Counts 1, 2, 4, 6, and 8 is unreasonable and inappropriate and

18  is not fair and just.  It overwhelms the other sentencing

19  factors that I need to consider.

20       I sentence the whole person, not just the crime, but

21  the crimes are what bring the person before me, and one only

22  need watch these videos to see the level of violence committed

23  against ordinary folks in this community going about their

24  daily lives as best they can.

25       I want to get his name because -- Mr. Torres.

1   Mr. Torres was at a church function, a church function, and

2   was given money by the church to go to the gas station to

3   purchase tortillas, chips -- my Spanish isn't good enough; I

4   remember exactly what term he used, but I can't say it; my

5   Spanish isn't good enough -- and other, essentially, snacks

6   for the people at the church function.  He left to go do that

7   simple act, and in the process of that act, of going to get

8   these snacks for people with church money, out of sheer

9   happenstance he is in a gas station that gets robbed in this

10   fashion, and this is captured on the video.  It was played for

11   the jury.  He hid the money on a shelf so that the church's

12   money wouldn't be stolen.

13          The forethought of that, of that decent human being

14   protecting other people's money, other parishioners' money

15   because he knew it wasn't their fault, that's what was going

16   through Mr. Torres' head at that moment.  And instantly, after

17   he hid the money, hid his wallet, he ran into the freezer,

18   into the cooler and tried to barricade the door.  What was

19   going through Mr. Torres' head at that moment?  "This is the

20   day I'm going to meet my maker.  I'm done for.  I'm a dead

21   man."  People get killed in freezers.  I'm old enough to know

22   the people who got killed out on East State Street when they

23   got locked into the freezer out there.  That's what goes

24   through people's heads when they run into a freezer in the

25   middle of an armed robbery is "I'm dead.  This is it."

1         The woman who was behind the bags of salt, who

2 cowered under the salt, praying that she is not going to be

3 spotted, and unfortunately she was, Mr. Claybron puts a gun to

4 her face and robs her.  She is probably thinking the same

5 thing, "This is the day I meet my maker.  I'm done for."  No

6 one wasn't struck.  Mr. Torres wasn't struck and she wasn't

7 struck -- I'm sorry -- that was Mr. Flores.  Ms. Torres was

8 the clerk who was struck in the head by Mr. Claybron with a

9 sawed-off shotgun.  There is no purpose in the world for a

10 sawed-off shotgun other than to cause mayhem, threaten people,

11 acts of violence, and to kill people.  You don't go hunting

12 with them.  Sawed-off shotguns are not known for their

13 durability.  The fact that her brains weren't blown out when

14 she got struck over the head with the sawed-off shotgun,

15 again, is an "amazing" -- in air quotes -- lucky fact.  And

16 why did she get smacked in the head, to get stitches, her head

17 opened up?  Because she couldn't get the money out fast

18 enough.  These are horrifically violent crimes.

19         The gentleman at Advanced Auto who ran out of the

20 store, out the backdoor -- he ran blocks down the road before

21 he could catch his breath when he stopped -- was shot at.

22 What is going through that guy's head?  "This is the day I

23 die.  I'm going to get hit in the back with a bullet."

24 Thankfully, he is not dead.

25         The complete lack of regard for the

1   safety -- safety -- the care, the human decency for other

2   people, it was on full display not once, not twice, but on

3   each robbery.  And the recklessness to shoot out a door and

4   then run through it because you are panicked and a bullet

5   lodges across the street, I can't remember if it was across

6   Auburn or Kilburn, for anybody in the Seventh Circuit who is

7   going to read this transcript, those are very busy streets in

8   this community at all times of the day.  There is always cars

9   and people and trucks on those streets.  Again, thankfully,

10  nobody caught that bullet and died.

11          It wasn't a one-off robbery.  It was a series of

12  robberies.  It was by all definitions a crime spree.  So that

13  is the nature and circumstances of these offenses that I have

14  to consider.  And by sentencing Mr. Claybron to 27 years,

15  which would be the statutory minimum, I am completely

16  dismissing those actions and that behavior and the trauma and

17  effect on those people and on this community.  The last thing

18  this community needs is people on crime sprees running around

19  with sawed-off shotguns, shooting places up, shooting at

20  people, shooting people in the back, hitting them over the

21  head with a sawed-off shotgun.

22          The kinds of sentences that are available, well,

23  obviously, probation, this is ineligible.  That is a factor

24  for me to consider.  Look at the history and characteristics

25  of the defendant.  No education.  Gets out of school.

1   Employment, he had a job.  He quit the job to go sell drugs.

2   And I have addressed the unwarranted sentencing disparities.

3           So I need to impose a sentence that reflects the

4   seriousness of the offense.  Twenty-seven years, yes,

5   Mr. Claybron will be older.  I would hope at that age he

6   wouldn't commit crimes.  There are studies by the sentencing

7   commission showing that individuals who are convicted of gun

8   offenses, weapon offenses, are more likely to recidivate even

9   as they get older.  It decreases, but they still are compared

10  to the rest of the people who are sentenced, still higher

11  recidivists.

12          Factors, protect the public from further crimes, I

13  really certainly hope that Mr. Claybron has found a new

14  calling in life and has changed, but it's been a few years

15  versus a lifetime.

16          So when I go through all those factors, I will

17  sentence him to the bottom of the guideline range of

18  168 months for Counts 1, 2, 4, 6, and 8 to run concurrent with

19  each other, and then statutorily, the statutory minimums will

20  be imposed for Counts 3, 5, and 9, of 84 months for Count 3,

21  120 months for Count 5, and 120 months for Count 9.  Each of

22  those counts, Counts 3, 5, and 9, are consecutive to the

23  168 months for 1, 2, 4, 6, and 8.  The same is true for the

24  120 months, that is consecutive to Count 3 and consecutive to

25  the other counts.  The same for 9, consecutive to Counts 1, 2,

1    4, 6, and 8 and to Counts 3 and 5.

2           No fine imposed.

3           Restitution is imposed in the amount of $10,280.57:

4    $949.96 goes to Advanced Auto, $3 goes to Jeffrey Snyder,

5    $10 to Michelle Schmidt, $2,000 to Shell Express, $7,317.61 to

6    State Farm Insurance.

7           I don't believe there is a forfeiture here.

8           Special assessment is $100 for each count, so it

9    totals $800.

10          I will impose three years of supervised release for

11   Counts 1 through 6 and 7 through 9.  Those three years are

12   consecutive.

13          The conditions of supervised release will be those

14   identified by the probation department in the presentence

15   investigation report, again, which is docket entry 301, and

16   starting on page 40 of 55 in docket entry 301, box 1 is

17   checked, box 2 is checked, box 3 is checked, box 6 is checked,

18   and box 7 is checked, and those are the mandatory conditions

19   of supervised release.

20          On the next page, page 41, for discretionary

21   conditions of supervised release, box 4 is checked, box 6(a),

22   (b), (c), and (d) are checked.  Box (b) is modified that that

23   condition does not apply to the following persons:  Those

24   would be family members or coworkers.  Box (c) is modified

25   that he shall refrain from visiting the following types of

1    Honor.

2            THE COURT:  Okay.  Mr. Camarena, obviously, you

3    disagree with the substance of my ruling on the sentence, and

4    I certainly respect your disagreement in that regard, but are

5    there any procedural errors that I can correct at this point?

6            MR. CAMARENA:  No, Your Honor.

7            THE COURT:  Okay.  All right.  So that will be the

8    sentence that will be imposed.

9            Thank you very much.

10            MS. MAVEUS:  Thank you.

11            MR. CAMARENA:  Thank you.

12      (Which were all the proceedings heard.)

13                          CERTIFICATE

14      I certify that the foregoing is a correct transcript from

15    the record of proceedings in the above-entitled matter.

16    */s/Heather M. Perkins-Reiva*            *November 3, 2022*

17    _____          _____

       Heather M. Perkins-Reiva                    Date
18    Official Court Reporter

19

20

21

22

23

24

25

# AMENDMENTS TO THE SENTENCING GUIDELINES

Pursuant to section 994(p) of title 28, United States Code, the United States Sentencing Commission hereby submits to the Congress the following amendments to the *Guidelines Manual* and the reasons therefor. As authorized by such section, the Commission specifies an effective date of November 1, 2023, for these amendments.

---

## Amendments to the Sentencing Guidelines, Policy Statements, Official Commentary, and Statutory Index

---

1.    **Amendment:** Section 1B1.13 is amended—

by inserting at the beginning the following new heading: "(a) *In General.*—";

by striking "Bureau of Prisons under" and inserting "Bureau of Prisons or the defendant pursuant to";

and by inserting at the end the following:

"(b)    *Extraordinary and Compelling Reasons.*—Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:

   (1)    *Medical Circumstances of the Defendant.*—

      (A)    The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

      (B)    The defendant is—

         (i)    suffering from a serious physical or medical condition,

         (ii)    suffering from a serious functional or cognitive impairment, or

         (iii)    experiencing deteriorating physical or mental health because of the aging process,

         that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

App. 024

In promulgating this amendment, the Commission recognizes that these circuit conflicts involve guideline and commentary provisions that Congress directly amended, and that Congress also directed the Commission not to "alter or repeal" the congressional amendments. *See* Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003, Pub. L. 108–21, § 401(g), (j)(4), 117 Stat. 650. In recognition of this limitation, the amendment defines a term that the congressional amendments did not define—"preparing for trial"—without altering or repealing the amendments that Congress made.

**8.    Amendment:**

**Part A (Status Points under §4A1.1)**

The Commentary to §2P1.1 captioned "Application Notes" is amended in Note 5 by striking "§4A1.1(d)" and inserting "§4A1.1(e)".

Section 4A1.1 is amended—

by striking subsection (d) as follows:

"(d)    Add 2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.";

by redesignating subsection (e) as subsection (d);

and by inserting at the end the following new subsection (e):

"(e)    Add 1 point if the defendant (1) receives 7 or more points under subsections (a) through (d), and (2) committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.".

The Commentary to §4A1.1 captioned "Application Notes" is amended—

by striking Note 4 as follows:

"4.    *§4A1.1(d).* Two points are added if the defendant committed any part of the instant offense (*i.e.*, any relevant conduct) while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status. Failure to report for service of a sentence of imprisonment is to be treated as an escape from such sentence. *See* §4A1.2(n). For the purposes of this subsection, a 'criminal justice sentence' means a sentence countable under §4A1.2 (Definitions and Instructions for Computing Criminal History) having a custodial or supervisory component, although active

supervision is not required for this subsection to apply. For example, a term of unsupervised probation would be included; but a sentence to pay a fine, by itself, would not be included. A defendant who commits the instant offense while a violation warrant from a prior sentence is outstanding (*e.g.*, a probation, parole, or supervised release violation warrant) shall be deemed to be under a criminal justice sentence for the purposes of this provision if that sentence is otherwise countable, even if that sentence would have expired absent such warrant. *See* §4A1.2(m).";

by redesignating Note 5 as Note 4;

in Note 4 (as so redesignated) by striking "§4A1.1(e)" each place such term appears and inserting "§4A1.1(d)";

and by inserting at the end the following new note 5:

"5.    *§4A1.1(e)*. One point is added if the defendant (1) receives 7 or more points under §4A1.1(a) through (d), and (2) committed any part of the instant offense (*i.e.*, any relevant conduct) while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status. Failure to report for service of a sentence of imprisonment is to be treated as an escape from such sentence. *See* §4A1.2(n). For the purposes of this subsection, a 'criminal justice sentence' means a sentence countable under §4A1.2 (Definitions and Instructions for Computing Criminal History) having a custodial or supervisory component, although active supervision is not required for this subsection to apply. For example, a term of unsupervised probation would be included; but a sentence to pay a fine, by itself, would not be included. A defendant who commits the instant offense while a violation warrant from a prior sentence is outstanding (*e.g.*, a probation, parole, or supervised release violation warrant) shall be deemed to be under a criminal justice sentence for the purposes of this provision if that sentence is otherwise countable, even if that sentence would have expired absent such warrant. *See* §4A1.2(m).".

The Commentary to §4A1.1 captioned "Background" is amended in the last paragraph by striking "Section 4A1.1(d) adds two points if the defendant was under a criminal justice sentence during any part of the instant offense" and inserting "Section 4A1.1(e) adds one point if the defendant receives 7 or more points under §4A1.1(a) through (d) and was under a criminal justice sentence during any part of the instant offense".

Section 4A1.2 is amended—

in subsection (a)(2) by striking "§4A1.1(e)" and inserting "§4A1.1(d)";

in subsection (m) by striking "§4A1.1(d)" and inserting "§4A1.1(e)";

in subsection (n) by striking "§4A1.1(d)" and inserting "§4A1.1(e)";

§4A1.1(d). Two points are added if the defendant committed any part of the instant offense (*i.e.*, any relevant conduct) while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status. Failure to report for service of a sentence of imprisonment is to be treated as an escape from such sentence. *See* §4A1.2(n). For the purposes of this section, a **"criminal justice sentence"** means a sentence under §4A1.2 (Definitions and Instructions for Computing Criminal History) having a custodial or supervisory component, although active supervision is not required for this provision to apply. For example, a term of unsupervised probation would be included; but a sentence to pay a fine, by itself, would not be included. A defendant who commits the instant offense while a violation warrant from a prior sentence is outstanding (*e.g.*, a probation, parole, or supervised release violation) is deemed to be under a criminal justice sentence for the purposes of this provision if that sentence is otherwise countable, even if that sentence would have expired



# Revisiting Status Points

United States Sentencing Commission

*June 2022*



App. 027

# Introduction

Criminal history plays a pivotal role in determining an offender's sentencing range under the guidelines.[1]  Courts calculate a criminal history score for each offender by assigning one, two, or three points to any qualifying prior sentences.[2]  In addition, if the offender committed the instant federal offense while still serving a sentence in another case (for example, while on probation or parole), two more points are added.[3]  These additional points, outlined in §4A1.1(d), are commonly referred to as "status points."

In 2005, the United States Sentencing Commission examined status points as part of a broader analysis of how well the guidelines' criminal history computation predicts recidivism.[4]  This report revisits status points with greater focus and examines their application and significance.  The report begins by outlining how criminal history is calculated under the guidelines and by reviewing prior Commission research on the association between criminal history and recidivism.  The report then examines how many offenders received status points in the last five fiscal years and compares them to offenders who did not receive status points.  Next, the report analyzes the rearrest rates for offenders with and without status points who were released from prison or began a term of probation in 2010.  Finally, the report considers how much status points contribute to the criminal history score's prediction of rearrest.

**Authors**

**Vera M. Kachnowski, J.D.**
  *Assistant General Counsel*
  *Office of General Counsel*

**Sarah W. Craun, Ph.D.**
  *Senior Research Associate*
  *Office of Research and Data*

**Kevin T. Maass, M.A.**
  *Research Associate*
  *Office of Research and Data*

United States Sentencing Commission

# Key Findings

In the last five fiscal years:

- Over one-third of federal offenders (37.5%) received two "status points" under §4A1.1(d) as part of their criminal history scores. For 61.5 percent of such offenders, the inclusion of the two points resulted in a higher Criminal History Category.



- The vast majority of offenders who received status points (92.6%) had criminal history scores that placed them in Criminal History Category III and higher, compared to a little less than half of offenders who did not receive status points (47.0%).

- Offenders who received status points had an average of seven criminal history points for qualifying prior sentences (*i.e.*, before adding in two status points). Offenders without status points had an average of five criminal history points for prior sentences, accounting for their total criminal history scores. Most offenders with status points (71.5%) would be in Criminal History Category III or higher based solely on their prior sentences.

App. 029

Among offenders who were released in 2010:

- Those who received status points were rearrested at similar rates to those without status points who had the same criminal history score. For example, among offenders whose criminal history score was seven, 69.6 percent of those with status points and 70.4 percent of those without status points were rearrested in the eight years after release.

- Three-fifths (61.1%) of offenders who received status points had five or more criminal history points for prior sentences (*i.e.*, before adding in two status points). These offenders had a statistically similar rearrest rate to offenders without status points who had the same number of points for prior sentences.

- The remaining two-fifths (38.9%) of offenders who received status points had one to four criminal history points for prior sentences (*i.e.*, before adding in two status points). These offenders had a statistically higher rearrest rate than offenders without status points who had the same number of points for prior sentences.

- Status points only minimally improve the criminal history score's successful prediction of rearrest—by 0.2 percent. With status points included in the calculation for eligible offenders, the score successfully predicts rearrest 65.1 percent of the time, compared to 64.9 percent of the time with status points removed.

**WHAT PERCENT OF THE TIME DOES THE CRIMINAL HISTORY SCORE CORRECTLY PREDICT REARREST?**



| **65.1%** | **64.9%** |
| --- | --- |
| **FULL CRIMINAL HISTORY SCORE** | **CRIMINAL HISTORY SCORE WITH STATUS POINTS REMOVED** |



## ISSUE FOR COMMENT:          RETROACTIVITY

This document sets forth the unofficial text of an issue for comment promulgated by the Commission and is provided only for the convenience of the user. As with all amendments that the Commission has voted to promulgate but has not yet officially submitted to Congress and the Federal Register, authority to make technical and conforming changes may be exercised and motions to reconsider may be made. Once the amendments have been submitted to Congress and the Federal Register, official text of the issue for comment will be posted on the Commission's website at www.ussc.gov and will be available in a forthcoming edition of the Federal Register

Written public comment should be received by the Commission not later than June 23, 2023. Public comment received after the close of the comment period may not be considered. All written comment should be sent to the Commission via any of the following two methods: (1) comments may be submitted electronically via the Commission's Public Comment Submission Portal at https://comment.ussc.gov; or (2) comments may be submitted by mail to the following address: United States Sentencing Commission, One Columbus Circle, N.E., Suite 2-500, Washington, D.C. 20002-8002, Attention: Public Affairs – Issue for Comment on Retroactivity. For further information, see the full contents of the official notice when it is published in the Federal Register (available at www.ussc.gov).

The issue for comment is as follows:

## REQUEST FOR COMMENT ON PARTS A AND B OF THE CRIMINAL HISTORY AMENDMENT, RELATING TO "STATUS POINTS" AND CERTAIN "ZERO-POINT" OFFENDERS

On May 1, 2023, the Commission submitted to Congress amendments to the sentencing guidelines and official commentary, which become effective on November 1, 2023, unless Congress acts to the contrary. Such amendments and the reasons for amendment are included in this notice.

Section 3582(c)(2) of title 18, United States Code, provides that "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in

section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Pursuant to 28 U.S.C. § 994(u), "[i]f the Commission reduces the term of imprisonment recommended in the guidelines applicable to a particular offense or category of offenses, it shall specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for the offense may be reduced."

The criminal history amendment has the effect of lowering guideline ranges. The Commission intends to consider whether, pursuant to 18 U.S.C. 3582(c)(2) and 28 U.S.C. § 994(u), Parts A and B of this amendment, relating to the impact of "status points" at §4A1.1 (Criminal History Category) and offenders with zero criminal history points at new §4C1.1 (Adjustment for Certain Zero-Point Offenders), should be included in subsection (d) of §1B1.10 (Reduction in Term of Imprisonment as a Result of Amended Guideline Range (Policy Statement)) as an amendment that may be applied retroactively to previously sentenced defendants. In considering whether to do so, the Commission will consider, among other things, a retroactivity impact analysis and public comment. Accordingly, the Commission seeks public comment on whether it should make Parts A and B of this amendment available for retroactive application. To help inform public comment, the retroactivity impact analysis will be made available to the public as soon as practicable.

The Background Commentary to §1B1.10 lists the purpose of the amendment, the magnitude of the change in the guideline range made by the amendment, and the difficulty of applying the amendment retroactively to determine an amended guideline range under §1B1.10(b) as among the factors the Commission considers in selecting the amendments included in §1B1.10(d). To the extent practicable, public comment should address each of these factors.

The Commission seeks comment on whether it should list Parts A and B of the amendment, addressing the impact of "status points" at §4A1.1 and offenders with zero criminal history points at new §4C1.1, in subsection (d) of §1B1.10 as changes that may be applied retroactively to previously sentenced defendants. For each of these parts, the Commission requests comment on whether that part should be listed in subsection (d) of §1B1.10 as an amendment that may be applied retroactively.

If the Commission does list one or both parts of the amendment in subsection (d) of §1B1.10 as an amendment that may be applied retroactively to previously sentenced defendants, should the Commission provide further guidance or limitations regarding the circumstances in which and the amount by which sentences may be reduced?